## Purol, Inc. *v.* Great Eastern System, Inc., Appellant.

Argued September 30, 1937.

Before KELLER, P. J., CUNNINGHAM, BALDRIGE, STADTFELD, PARKER, JAMES and RHODES, JJ.

*William N. J. McGinniss*, for appellant.

*Langdon W. Harris, Jr.,* of *Herman & Harris*, for appellee.

OPINION BY KELLER, P. J., March 4, 1938:

The questions raised by this appeal relate only to the contributory negligence of the plaintiff's driver. The negligence of the defendant is admitted. The main question is whether the failure of the plaintiff's driver to comply with the provisions of section 834 of the Vehicle Code of 1929, P. L. 905, as amended by the Act of July 16, 1935, P. L. 1056 [1], 75 PS sec. 432, directing the carrying of flares and the placing of a lighted flare in front, to the rear, and on the highway side, of a commercial vehicle disabled on the highway during the period when lighted lamps must be displayed on vehicles[2], requires the court to hold, as matter of law, that he was guilty of such contributory negligence as to prevent a recovery by the plaintiff in an action against the defendant who negligently collided with plaintiff's disabled truck. The lower court, relying on the case of *Lane v. Mullen*, 285 Pa. 161, 131 A. 718, was of opinion that the failure of the driver to comply with the provisions of the statute did not prevent a recovery for the damages suffered because of defendant's negligence unless the violation of the statute was the proximate or efficient cause of the accident; and that in the circumstances disclosed by the evidence in this case that was a question for the jury. We agree with the learned judge of the court below.

There is no hard and fast rule as to the effect of the violation of a statute on the plaintiff's right to recover.

---

[1] Since further amended by Act of June 29, 1937, P. L. 2329.

[2] From one hour after sunset to one hour before sunrise, and when there is not sufficient light to render persons and vehicles clearly discernible at a distance of 500 feet ahead (Sec. 801).

The general rule is that the violation of a statute will not convict a plaintiff of contributory negligence unless it was the effective cause of the accident or, at least, contributed to its happening: *Lane v. Mullen*, supra, p. 164. There may be circumstances in connection with the mischief to be remedied by the statute or in the enforcement of its provisions, which require a ruling that an injury suffered in connection with a violation of a statute will be attributed to such violation. Thus in *McIntyre v. Pope*, 326 Pa. 172, 191 A. 607, and *Mahoney v. City of Pittsburgh*, 320 Pa. 44, 181 A. 590, which were concerned with the violation of section 1001 of the Vehicle Code of 1929, which declared 'reckless driving' unlawful and provided that if the accident occurred due to the front seat of the vehicle having been occupied by more than three persons, it constituted 'reckless driving', it was held that when an accident results from the manner in which a motor vehicle is operated, the fact that, contrary to the provisions of the statute, the front seat of the car had been occupied by more than three persons constituted such contributory negligence as to bar a recovery. In such event, the conclusion inevitably followed that, in some measure, the hampering of the driver's control by the overcrowding of the front seat contributed to the accident and the violation of the statute in this respect could not be viewed in any other light than as a contributing cause; that the law would conclusively infer that the unlawful crowding contributed to the failure to exercise due care in the operation of the car. The statute is then applied with the same unbending strictness given the rule that a driver approaching a railroad track must stop, look and listen: *Serfas v. Lehigh & N. E. R. Co.*, 270 Pa. 306, 113 A. 370. Compare the cases construing statutes prohibiting the employment of children below a certain age on or about machinery, which render an employer liable for injury resulting to a minor

employed contrary to the statute irrespective of the employer's knowledge of the violation of the statute: *Chabot v. Pittsburgh P. G. Co.,* 259 Pa. 504, 103 A. 283.

On the other hand there are numerous decisions which hold that a violation of a statute will prevent a recovery by the plaintiff only where such violation was the proximate or an efficient or 'legal' cause of the accident—that is, in the language of the Restatement— Torts—when the actor's conduct was "a substantial factor in bringing about the harm" (Sec. 431, and Pennsylvania Annotations—See *Murphy v. Neely,* 319 Pa. 437, 179 A. 439). Thus violation of a statute, relating to the registering of motor vehicles, will not prevent a recovery, where the injury had no relation to the violation of the statute: *Williams v. D'Amico,* 78 Pa. Superior Ct. 575; or the operation of the car by a non-licensed person: *Yeager v. Winton M. C. Co.,* 53 Pa. Superior Ct. 202; *McIlhenny v. Baker,* 63 Pa. Superior Ct. 385; *Hart v. Altoona & L. V. Ry. Co.,* 79 ;Pa. Superior Ct. 180; *Scorsoni v. Pittsburgh P. & P. Co.,* 272 Pa. 253, 116 A. 154; or the failure of the plaintiff to have his car equipped with legal lights, where the accident would most probably have occurred even if they had been so equipped: *Clamper v. Phila.,* 279 Pa. 385, 124 A. 132; *Lane v. Mullen,* 285 Pa. 161, 131 A. 718; *Little v. Straw,* 326 Pa. 577, 579, 580, 192 A. 894; or the violation of motor vehicle laws: *Siglin v. Haiges,* 95 Pa. Superior Ct. 588, 592; or that the plaintiff was at the time violating the Sunday Law: *Mohney v. Cook,* 26 Pa. 342. The principle is stated in 1 Thompson on Negligence, sec. 82,— and approved in *Lane v. Mullen,* supra —as follows: "The mere fact that the plaintiff on the one hand, or the defendant on the other[3], was engaged

---

[3] See *Christner v. Cumberland Coal Co.,* 146 Pa. 67, 23 A. 221; *Brunner v. Blaisdell,* 170 Pa. 25, 32 A. 607; *Zandras v. Moffett,* 286 Pa. 477, 133 A. 817; *Grein v. Gordon,* 280 Pa. 576, 124 A.

in violating the law in a given particular at the time of the happening of the accident, will not bar the right of action of the former, nor make the latter liable to pay damages, unless such violation of law was an efficient cause of the injury." See also, Restatement—Torts (Negligence), sections 468 and 469 and Pennsylvania Annotations to the same.

We must, therefore, examine the evidence in the record to determine in which category the case falls; and as the verdict was in favor of the plaintiff any disputed questions of fact must be resolved in its favor. Thus considered, the relevant facts may be stated as follows:

On January 6, 1936 plaintiff's Pierce-Arrow truck had been driven by its employee, Baker, from Trenton, N. J. to Marcus Hook, Pa. to get a load of oil. He left Marcus Hook about 2:00 o'clock P. M: via the Lincoln Highway on his journey back to Trenton, and while near Oxford Valley, Pa., between 5:00 and 5:30 o'clock P. M. his lights went out and his motor went dead. He coasted down hill until he came opposite to Crowley's gas station and garage, where he stopped his truck after pulling as far as possible to the right, leaving the left wheels occupying about one foot of the cement roadway which was twenty feet wide. A deep ditch at the side of the road prevented his going any further off the cement road. He did not know what caused the motor to go dead but supposed it was battery trouble. He went into Crowley's place to telephone his employer at Trenton, but there was no telephone there. He tried to get some flares but they had none; but Crowley lighted a red lantern and put it about forty-five feet back of the rear of the truck. Baker, meanwhile, walked about 600 feet further on to H. P. Hewitt's

737; *Richards v. Warner Co.*, 311 Pa. 50, 166 A. 496; *Snyder v. Pa. R. R. Co.*, 205 Pa. 619, 55 A. 778; *Hardie v. Barrett*, 257 Pa. 42, 101 A. 75; *Stubbs v. Edwards*, 260 Pa. 75, 103 A. 511; *Mehler v. Doyle*, 271 Pa. 492, 115 A. 797.

garage and service station where he telephoned his employer and, being unable to get flares, borrowed another red lantern which he placed some distance in the rear of the truck. This consumed about ten or fifteen minutes. He had purposely stopped the truck at a point where three electric lights in front of the gas station shed their light on the front and rear of the truck. On the front bumper of the truck were two green reflectors and on the rear two red reflectors. The lights from the gas station illuminated these reflectors. Some rain was falling, which froze as it fell, and the road was icy and slippery. It was not yet dark. One could see the truck for a distance of 300 feet without lights and 500 feet with lights. About 5:30 o'clock defendant's bus well filled with passengers came traveling south towards Philadelphia—the opposite direction from the way plaintiff's truck had been going. When it passed by Hewitt's garage it was immediately back of a truck and going forty miles an hour—a speed greater than allowed by law to such busses. (Sec. 1002 (c) 8 of the Vehicle Code of 1929, supra, as amended by Act of July 16, 1935, P. L. 1056). After passing Hewitt's garage it attempted to pass the truck in front of it on the left, and, in doing so, went over on the northbound traffic lane. When the driver saw he could not pass the truck, he jammed on his brakes about 100 feet north of where plaintiff's truck was stalled and skidded into plaintiff's truck knocking it into the ditch and practically demolishing it. Mr. Hewitt, who was waiting to drive a truck across traffic into his garage, saw defendant's bus go by and followed it with his eye the whole way (600 feet) until it hit plaintiff's truck.

In the light of these facts the court was not required to hold as matter of law that the failure of plaintiff's driver to place a flare one hundred feet *in front* of the truck was an efficient cause of the accident; on the contrary the evidence leads to the conclusion that the

collision would have occurred even if the provision of the Vehicle Code relating to flares had been strictly observed. The accident happened because of the skidding of the defendant's bus as a result of the driver's sudden putting on the brakes when it was traveling at a rate of speed unlawful at all times, but especially dangerous in view of the icy and slippery condition of the road. There was ample room to pass the disabled truck if defendant's driver had not lost control of the bus. The collision occurred not because defendant's driver did not see plaintiff's truck, for want of a flare in front, but because, by his negligent driving at an excessive speed, he had lost control of the bus, which skidded into plaintiff's truck. The court properly held that, in the circumstances present in this case, it was for the jury to decide whether the failure of plaintiff's driver to comply with the sections of the Vehicle Code relating to the placing of flares in front of a disabled truck had been an efficient cause contributing to the accident.

We find no merit in the third assignment of error. The collision occurred ten or fifteen minutes after the disabled truck came to rest in front of Crowley's garage, during which time plaintiff's driver went to two garages and telephoned to his employer and got and placed red lanterns. There is nothing in the evidence to show that Baker had any knowledge that either Crowley or Hewitt was equipped with facilities to tow the truck off the highway. No one, at the time, made any such suggestion to him. The fact that, at the trial, they testified that they could have furnished a towing truck, if it had been asked for, would not convict him of contributory negligence.

The assignments of error are overruled and the judgment is affirmed.